**The below described is SIGNED.**

**Dated: December 12, 2012**

*William T. Thurman*

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re: | |
| **TEJAL INVESTMENT, LLC,** | **Bankruptcy No. 12-28606** |
| Debtor. | **Chapter 11** |
| | **Chief Judge William Thurman** |

**MEMORANDUM DECISION GRANTING MOTION FOR RELIEF FROM STAY**

The matter before the Court is the Motion for Relief from Automatic Stay or to Dismiss (the "Motion") filed by First-Citizens Bank & Trust Co. (the "Bank") seeking termination of the stay as it relates to certain real property owned by the Debtor. The Court conducted an evidentiary hearing on the Motion on November 15, 2012. At the hearing, Daniel K. Watkins appeared on behalf of the Bank and Tyler Todd appeared on behalf of the Debtor. The parties presented evidence and oral argument. Based on the same, the pleadings, and other court papers

on file and for good cause appearing, the Court issues this Memorandum Decision, which will

constitute its findings of fact and conclusions of law.[1]

## I.    JURISDICTION AND VENUE

As preliminary matters, the Court finds that it has appropriate jurisdiction to consider the

Motion pursuant to 28 U.S.C. §§ 157(b)(2)(G) and 1334.  Venue is appropriate pursuant to 28

U.S.C. § 1408.  Notice for the hearing is found to be proper in all respects.

## II.    BACKGROUND

Some analysis of the facts surrounding the filing of the present case is appropriate to put

the Court's ruling in perspective.  The current case was filed as a chapter 11 case on July 3, 2012.

The Debtor has remained a debtor-in-possession and no committee has been appointed. Other

than the Motion filed by the Bank, no motions seeking stay relief, conversion, or dismissal have

been filed.[2] The Debtor filed a Chapter 11 Plan of Reorganization ("Plan") and Disclosure

Statement on November 13, 2012.  No hearings have been set on the approval of the Disclosure

Statement or the confirmation of the Plan.  The Debtor's primary asset is a 60-room hotel

property (the "Property") in Logan, Utah. Since 2009, the Debtor has operated the hotel pursuant

to a franchise agreement with Choice Hotel International under the trade name "Comfort Inn."

The Debtor also lists several other assets on its schedules, including: accounts receivable;

---

[1]  This Memorandum Decision shall constitute the Court's findings of fact and
conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable to this
proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

[2]  The Debtor filed a Motion to Remove Receiver on July 26, 2012. Motion to Remove
Receiver, Dkt. 13. The Motion to Remove Receiver was granted at a hearing held on August 7,
2012 and Hospitality Receiver, LLC was removed as receiver on the Debtor's hotel property.
Order Granting Motion to Remove Receiver, Dkt. 28.

2

furniture; fixtures and equipment; and deposits. Accordingly, it appears that the Debtor is not a

single asset real estate case within the definition of 11 U.S.C. § 362(d)(3) and 101(51B).[3] The

Debtor does consider itself to be a "small business debtor" within the definition of § 101(51D).

Prior to filing the petition in this case, the Debtor was in a previous chapter 11 case in this

district. The Debtor filed the previous chapter 11 case on June 14, 2010 and it was assigned case

number 10-28056. No plan was confirmed in that case and the case was subsequently dismissed

by motion of the Bank on December 20, 2011. The order of dismissal indicated that the case was

dismissed with prejudice.[4]

The Bank asserts in the present case that the stay should be terminated pursuant to §

362(d)(2) and (d)(4)(B). Each code section will be discussed in detail hereafter, however, in

summary, § 362(d)(2) allows the court to terminate the stay where there is no equity in property

claimed by the moving party and the property is not necessary to an effective reorganization.

Section 362(d)(4)(B) provides that the court shall grant relief from the stay where the filing of the

case is found to be part of a scheme to hinder, delay or defraud creditors that involved multiple

filings affecting the real property claimed to be secured by the moving party.

---

[3] Unless specifically stated hereafter, all subsequent references to chapter and sections shall refer to Title 11 of theUnited States Code.

[4] Order Dismissing Bankruptcy Case with Prejudice, Case No. 10-28056, Dkt. 177. Although the Court notes that the Debtor's previous case was apparently dismissed with prejudice, the Bank did not raise this issue in the Motion and it will not be addressed in this Memorandum Decision.

III.    **DISCUSSION**

A.    **Section 362(d)(2)**

Under § 362(d)(2), a secured party is entitled to relief from the automatic stay of an act

against property if "the debtor does not have any equity in such property; and such property is not

necessary for an effective reorganization." Pursuant to § 362(g), the party requesting relief from

stay has the burden of proof on the issue of equity and the party opposing the relief from stay has

the burden of proof on all other issues. § 362(g)(1)–(2). Thus, the Bank has the burden of proof

to show that the Debtor does not have equity in the Property and the Debtor has the burden of

proof to show that the Property is necessary to an effective reorganization. At the evidentiary

hearing held on November 15, 2012 on the Motion, the parties stipulated to the fact that the

Debtor has no equity in the Property over and above the amount of the Bank's secured claim.[5]

Thus, the bulk of the evidence received and oral argument presented at the hearing focused on

the second prong of § 362(d)(2) and whether the Property is necessary for an effective

reorganization of the Debtor.

The Bank contends that the Property is not necessary for an effective reorganization of

the Debtor because any reorganization is not possible or feasible given the Debtor's financial

circumstances and proposed Plan. Morever, as the Bank points out, as the largest unsecured

creditor and the only non-governmental secured creditor, without the Bank's support the Debtor

will be unable to confirm the Plan.

---

[5]  In the Stipulation filed November 13, 2012, the Bank and the Debtor stipulated that the
Debtor does not have equity in the Property. The Debtor's appraisal dated November 3, 2012
showed the value of the Property at $1,710,000 and the Bank's appraisal dated July 9, 2012
showed the value of the property at $1,270,000. The stipulated total amount owing on the Bank's
secured claim at the time of the petition filing was $2,442,752. Stipulation, Dkt. 52.

The Debtor, on the other hand, contends that the Property is essential to its reorganization and that without the Property there is "no hope nor even a purpose to reorganize." Debtor's Objection, Dkt. 44. The Court received as evidence the Debtor's appraisal of the Property dated November 3, 2012 (Exhibit C) and "Projections for 2013 "(Exhibit B) in support of the Debtor's contention that the Plan is feasible. The Court did not receive the Debtor's "STAR" reports for the months January-September 2012 as evidence (proposed Exhibit A) and sustained the Bank's objection as to hearsay and lack of foundation. The Court heard testimony from Jiten Natha and Hasmukh Natha, the two members and managers of the Debtor.

To meet the second prong of § 362(d)(2), the Debtor must show more than merely that the Property is "necessary to an effective reorganization." As stated by the Supreme Court in the pivotal case on the subject, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (Timbers)*:

> What [Section 362(d)(2)(B)] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts . . . have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." 484 U.S. 365, 375-76 (1988).

The standard, commonly referred to as the "sliding scale," is lower for debtors that are within the 120-day exclusivity period of § 1121(b). *See Timbers*, 484 U.S. at 375–76; *In re Gunnison Center Apartments, LP*, 320 B.R. 391, 402 (Bankr. D. Colo. 2005). However, if the relief from stay motion is filed near the end of the exclusivity period the Debtor must show more than "plausibility" and instead must show "that a successful reorganization within a reasonable time is 'probable.'" *In re Gunnison Center Apartments, LP*, 320 B.R. at *id.* (quoting *In re Holly's Inc.*, 140 B.R. 643, 703-04 (Bankr. W.D. Mich. 1992)). The definition of "probable" is "having more

5

evidence for than against or supported by evidence which inclines the mind to believe, but leaves some room for doubt or 'likely.'" *In re Gunnison Center Apartments, LP*, 320 B.R. at *id.* (quoting BLACK'S LAW DICTIONARY 1201 (6th ed. 1990)).

Here, the Bank filed the Motion on September 24, 2012 and the expiration of the Debtor's 120-day exclusivity period was October 31, 2012. The Debtor filed the Plan on November 13, 2012. Thus, the higher "probable" standard applies to the Debtor because the Motion was filed near the end of the Debtor's exclusivity period.

Having weighed the evidence and assessed the credibility of the Debtor's witnesses presented on this issue, the Court finds that the Debtor has not met its burden of proof under § 362(d)(2)(B) and that there is no "reasonable possibility of a successful reorganization within a reasonable time." A successful reorganization for the Debtor is unreasonable and not probable because the Plan is not feasible and reorganization is not in prospect given the Debtor's financial circumstances.

The bulk of the evidence presented at the hearing on § 362(d)(2)(B) focused on the Debtor's contention that the Plan is feasible given the Debtor's anticipated increase in gross revenue and the reasons behind the expected increase. Jiten Natha testified that the hotel was closed for roughly one year to complete the renovations required to operate under the Choice Hotel brand, and was reopened as a Comfort Inn in 2009. The Debtor placed great emphasis on the fact that the Debtor's hotel is the only Choice Hotel in Logan, Utah.

The Court received as evidence the Debtor's August and September Monthly Operating Reports and the Debtor's self-prepared projections for 2013 for the hotel. Based on the Debtor's revenue and expense projections for 2013, Jiten Natha testified that he believed the gross revenue

in 2013 would be approximately $776,000. He testified that he believed that for the last 3 months of 2012, the hotel would be able to generate gross revenue of "$150,000 or so," which would make the 2012 yearly total approximately $630,276.40.[6] Hasmukh Natha testified that the hotel's gross revenue in 2011 was approximately $540,000. He testified that in 2010 the hotel's gross revenue was approximately $510,000.

The Court finds the testimony presented vague and speculative. The witnesses provided no evidence for their assumption that the hotel's gross revenue would drastically increase from $630,276.40 in 2012 (a generous estimate) to $776,000 in 2013 other than the fact that the hotel is the only Choice Hotel in Logan and that the hotel was remodeled in 2009. The Bank provided calculations demonstrating that based upon the current financials, and even based upon the Debtor's projections, that the Plan is not feasible.

Under the assumption that the Debtor's revenue for 2012 will remain on the same pace for the last 3 months of the year (October, November, and December), even though Jiten Natha testified that the winter months are the slowest months of the year for the hotel, the Debtor's projected gross revenue for 2012 would be $640,368.[7] Projecting the other figures, such as expenses, depreciation, and interest expense to the Bank, the Debtor's net cash flow for 2012 would be $193,178. Under the Plan as filed, the Debtor will be making payments totaling $259,668

---

[6] The Debtor's September 2012 Monthly Operating Report filed with the Court shows gross revenue for the 9 months ended September 30, 2012 of $480,276.40. Monthly Operating Report for September 2012, Dkt. 46.

[7] The Bank arrived at this number by taking the gross revenue for the 9 months ended September 30, 2012 from the Debtor's September Monthly Operating Report, of $480,276.40, dividing it by 9 months, and multiplying that figure by 12 months.

to creditors.[8] After deducting the annualized monthly plan payments from the 2012 projected net

cash flow, the Debtor would fall approximately $66,490 short on making payments under the Plan.

In response, the Debtor argued that while it may fall short on payments in 2012, the large

increase in projected gross revenue in 2013 would ensure that the Debtor had enough cash flow to

devote to the Plan payments. However, as the Bank pointed out at the hearing, even if the Debtor

met its projected 2013 revenue of $767,000 it would still fall short of making plan payments as

proposed. Based on the Debtor's 2012 figures, the Debtor's cash flow margin is 30%, which

measures the Debtor's ability to convert sales to cash. Based upon the Debtor's projected $767,000

in gross revenue for 2013, assuming that the Debtor's cash flow margin remains 30%.

Based upon the evidence provided, the Court concludes that the Debtor failed to meet its

burden of proof under § 362(d)(2)(B). While the Property may be the primary, if not the only,

reason the Debtor is in bankruptcy, the Plan proposed is not in prospect. The Debtor presented no

evidence, other than the witnesses' hope, that supports the Debtor's projection for 2013. The Court

simply cannot see how the Debtor will increase gross revenue from approximately $640,368 to

$776,000 in a single year. While the Debtor argues that its designation as a Choice Hotel will

improve sales, the Court does not find this argument persuasive. The Debtor has been operating as

a Choice Hotel since 2009, even before the first bankruptcy case was filed and gross revenue, while

improved, does not support the figures the Debtor propounds. Thus, because the Property is "not

---

[8] This figure includes the annualized monthly payments to creditors under the Plan
including: $1,478 per month for priority tax claims; $6,939 per month to the Bank for its
arrearage claim; $13,087 per month to the Bank on its note; and $135 per month to the Utah
State Tax Commission.

necessary to an effective reorganization" within the meaning of § 362(d)(2)(B) and because there is

no equity in the Property, the Bank is entitled to relief from the automatic stay under § 362(d)(2).

### B.      Section 362(d)(4)

The Bank also seeks *in rem* relief under § 362(d)(4). That subsection was added to the

Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23. Its stated purpose is to "reduce abusive

filings." H.R. REP. NO. 109-31(I), at 70 (2005). In pertinent part, it provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay—
>
> ***
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor
> whose claim is secured by an interest in such real property, if the court finds that the filing
> of the petition was part of a scheme to delay, hinder, or defraud creditors that involved
> either—
>
>> (A) transfer of all or part ownership of, or other interest in, such real
>> property without the consent of the secured creditor or court approval; or
>>
>> (B) multiple bankruptcy filings affecting such real property.

At the evidentiary hearing held on November 15, 2012, the parties engaged in a lengthy

argument over the precise meaning of the word "scheme" and whether one exists in the instant

case. The Bank asserted that the circumstances surrounding the debtor's bankruptcy petitions,

especially the goal and timing of the second petition, are sufficient for the Court to find evidence of

a scheme to hinder or delay and to grant relief from the automatic stay.[9] In response, the Debtor

---

[9] The Bank made explicit at the evidentiary hearing that its argument under §
362(d)(4) was confined to showing that the Debtor's petition was part of a scheme to hinder
or delay its collection efforts. It did not argue that the Debtor has engaged in a scheme to
defraud the Bank.

introduced witness testimony that denied the existence of a scheme to hinder, delay or defraud the Bank.

The Court must therefore address whether the filing of the Debtor's bankruptcy petition is part of a scheme for the purposes of § 362(d)(4). The Bankruptcy Code does not supply a definition of the term, so in the years since the BAPCPA was enacted, courts have had to provide the word with meaning. The Tenth Circuit, however, has not often had occasion to rule on this issue. When the United States Bankruptcy Court for the District of Kansas ruled in *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008), it noted that a Tenth Circuit court had not yet "addressed new § 362(d)(4) in a reported case." Since the *Smith* decision, the Tenth Circuit has not released a reported case dealing with the issue at hand.

The *Smith* court followed the Ninth Circuit and defined a "scheme" as "a plan or design or an 'artful plot.'" *Id.* at 719 (citing *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006)). Other courts have also adopted the *Duncan* definition.[10] Some courts, however, have chosen slightly different definitions.[11]

But the finding of a scheme is just one step required to grant a creditor *in rem* relief under § 362(d)(4). Before a court will lift the automatic stay, it must find that (1) the debtor's bankruptcy

---

[10] *See, e.g.*, *In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010); *In re Lee*, 467 B.R. 906, 920 (B.A.P. 6th Cir. 2012) (citing *Smith*, 395 B.R. at 719); *In re Macaulay*, No. 11-07382-DD, slip op. at 3 (Bankr. D. S.C. July 16, 2012).

[11] *See In re Abdul Muhaimin*, 343 B.R. 159, 167 (Bankr. D. Md. 2006) ("The common meaning of scheme as applicable in this context is: 'a plan or program of action; esp. a crafty or secret one.'") (citing WEBSTER'S NINTH NEW COLLEGE DICTIONARY (1991)); *In re Young*, No. 06-80534, 2007 WL 128280, at *9 (Bankr. S.D. Tex. 2007) ("A 'scheme' is a 'plan or program of action.'") (citing MERRIAM-WEBSTER DICTIONARY 637 (Sidney Landau ed., Trident Press 1998)).

filing was part of a scheme; (2) the scheme was intended to delay, hinder or defraud the creditor;[12]

and (3) the scheme involved either (a) the transfer of some interest in the real property without

obtaining approval from the court or the secured creditor, or (b) multiple bankruptcy filings

affecting the real property. *In re Dorsey*, 476 B.R. 261, 265–66 (Bankr. C.D. Cal. 2012); *see also*

*Lee*, 467 B.R. at 920. A creditor seeking relief from the stay must make out a *prima facie* case as to

each element. *Lee*, 467 B.R. at 920; *see also Abdul Muhaimin*, 343 B.R. at 169–70.

      The second prong of this test reflects a significant amendment, for our purposes, to the

Bankruptcy Code. Two years ago, Congress passed the Bankruptcy Technical Corrections Act of

2010 ("BTCA"), Pub. L. No. 111-327, 124 Stat. 3557. The law struck "hinder, and" from §

362(d)(4), replacing it with "hinder, or". This one-word change lowered the bar to granting *in rem*

relief. Whereas *Smith* and other pre-BTCA decisions had read the relevant language of § 362(d)(4)

in the conjunctive, the amendment made clear that the phrase "delay, hinder, or defraud" should be

read in the disjunctive. In short, a finding that a debtor has acted with merely the intent to delay,

the intent to hinder, or the intent to defraud is now sufficient to grant relief from the automatic stay

under § 362(d)(4), assuming all other statutory requirements are met.

      Having weighed the evidence and assessed the credibility of the witnesses, the Court finds

that the Bank has satisfied those statutory requirements such that it is entitled to *in rem* relief.  As

an initial matter, the Court finds that the Bank is a party in interest and a creditor with a security

interest in the Debtor's real property such that it can seek relief under § 362(d)(4).

      The Court also finds that the Debtor's current bankruptcy petition was part of a scheme.

---

[12] The verb "delay" means "to postpone until a later time." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 358 (Anne H. Soukhanov & Kaethe Ellis eds., Riverside Publ'g Co. 1984). The verb "hinder" means "to get in the way of" or "to impede or delay the progress of." *Id.* at 583.

The Debtor admitted that the present petition was filed in response to the receiver that the Bank

had caused to be appointed to manage the motel property. Debtor's Preliminary Status Report, Dkt.

19.  Jiten and Hasmukh Natha, the two members of Tejal Investment, LLC, testified at the

evidentiary hearing and summarily denied engaging in a scheme to hinder, delay, or defraud the

Bank. But the admitted intent of the petition—to wrest control of the motel from the

receiver—shows that the filing was a plan, design, or artful plot. In addition, the first petition was

filed the day before the Bank's action to appoint a receiver in state court. The second petition was

filed days before a scheduled foreclosure sale. Together, these petitions evince a plan by the

Debtors to delay or hinder the Bank's efforts to move forward with remedies provided by state law.

The Court is also persuaded by the lack of a change in circumstances between the first and

second petitions. Other courts have viewed the absence of a change in the debtor's circumstances

between filings as a factor in favor of showing the existence of a scheme. *See, e.g.*, *Lee*, 467 B.R.

at 921; *In re Briggs*, No. 12-bk-14853, slip op. at 6 (Bankr. N.D. Ill. Aug. 31, 2012); *Macaulay*,

No. 11-07382-DD, slip op. at 3.

At first glance, Debtor's Summaries of Schedules show a marked drop in the value of the

motel property between the first and second petitions. The Summary filed in the first case valued

the Debtor's property at $2,750,000, while the Summary in the present case values it at $1,600,000.

But the parties later stipulated in the first case that the value of the motel property and associated

personal property was $1,600,000. In the present case, the parties obtained post-petition appraisals

of the property. The Bank's appraisal, dated July 9, 2012, states the Debtor's real and personal

property is worth $1,270,000. The Debtor's appraisal, dated November 3, 2012, lists a value of

$1,710,000. In both cases, the amount of the priority and nonpriority unsecured claims are nearly

12

the same. Therefore, the Court cannot say there has been any change in circumstances regarding the value of the Debtor's property.

Furthermore, the Debtor testified at the evidentiary hearing that the motel was performing about as well as, or perhaps marginally better than, in prior years. The figures attested to were rough estimates, but the impression given was that the operations between the first and second bankruptcy petitions have remained approximately the same. An examination of the Debtor-in-Possession Monthly Financial Reports from 2010, 2011, and 2012 does not lead to a conclusion that the Debtor's circumstances have changed.[13] Some months are missing, but the months that are provided do not show evidence of a change in the Debtor's operations between the first and present bankruptcy filings.

Next, the Court finds that the petition was filed with the intent to hinder or delay the Bank. Not only was the intent of the current petition to remove the receiver, but it was also filed only days before the Debtor's property was scheduled to be sold at foreclosure. As noted above, the first petition, which was eventually dismissed because the Debtor failed to achieve plan confirmation by a stipulated deadline, was filed immediately prior to another date that could have adversely affected the Debtor. Other courts have found intent to hinder or delay where debtors strategically file petitions to forestall adverse state action against the debtors' property. *See, e.g.*, *Smith*, 395 B.R. at 719; *Briggs*, No. 12-bk-14853, slip op. at 6; *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D. N.Y. 2009).

---

[13] The Court takes judicial notice of the Debtor's Monthly Operating Reports filed in the Debtor's previous chapter 11 case. *See St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (The Tenth Circuit Court of Appeals held that "a court may . . . take judicial notice, whether requested or not of its own records and files, and facts which are part of its public records." In addition, "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.") (citations omitted).

Last, the evidence before the Court is uncontested that the Debtor has filed multiple bankruptcy petitions affecting the Property, i.e. for the current case and the prior case. Despite the Debtor's assertion that the bankruptcy petition was not part of a scheme to delay, hinder or defraud the Bank, the Court finds the evidence in the Bank's favor and will grant the requested relief under § 362(d)(4). It appears that Congress has lowered the bar for finding grounds for terminating the stay with the 2010 amendment and this Court should not engage in contravening what appears to be the plain reading of those amendments.

The Court recognizes that the relief afforded by § 362(d)(4) is serious. *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 871 (B.A.P. 9th Cir. 2012); *Smith*, 395 B.R. at 719. An order granting relief under this section precludes not only the debtor, but also any third-party who subsequently gains an interest in the property, from receiving the protection of the automatic stay in a bankruptcy case affecting the property for a period of two years after the order is entered. But the factual findings show that the Debtor's conduct meets the statutory requirements under § 362(d)(4), entitling the Bank to relief from the stay.

## IV.    CONCLUSION

Based on the findings made herein, the Court concludes that it is compelled to grant the Motion.  A separate order will accompany this Memorandum Decision.

14

oo00–00oo

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION GRANTING MOTION FOR RELIEF FROM STAY** will be effected through the Bankruptcy Noticing Center to each party listed below:

Tejal Investment, LLC
815 North Main Street
Sunset, UT 84015
      *Debtor*

Tyler T. Todd
1LAW
Labrum Neeley Velez & Associates, PC
1173 South 250 West, Suite 311
St. George, UT 84770
      *Attorney for the Debtors*

Daniel K. Watkins
Peck Hadfield Baxter & Moore, LLC
399 North Main, Suite 300
Logan, UT 84321
      *Attorneys for First-Citizens Bank & Trust Co.*

15